### GOTTSCHALK v. RAILWAY EXPRESS AGENCY, Inc.

Civ. A. No. 8870.

District Court, D. New Jersey.

Jan. 30, 1947.

Walter R. Gottschalk, of Hoboken, N. J., for plaintiff.

Cox & Walburg, of Newark, N.J., for defendant.

T. BLAKE KENNEDY, District Judge.

The Court having heard the evidence and considered the admissions and stipulations of the parties, finds the facts and states the conclusions of law as follows:

Findings of Fact

1. On August 13, 1941, the petitioner was employed by the respondent as a general foreman at its West Side Terminal, 33d Street and 10th Avenue, New York City. This position was a supervisory position and known as an excepted position as distinguished from the classified employees.

2. On August 13, 1941, the petitioner held the rank of Captain of the Infantry in the Officers Reserve Corps of the United States Army and was on that day ordered into active duty in the United States Army and on that day he received a leave of absence from the respondent to carry out his military duties.

3. On November 26, 1945, petitioner received a certificate of service as Major of Infantry and reverted to his status in the Officers Reserve Corps of the United States Army. It is admitted that the petitioner honorably completed his military duties in the United States Army.

4. On December 1, 1945, he applied to the respondent for re-employment and on December 5, 1945, he returned to work for the respondent in the position of general foreman at the West Side Terminal at 33d Street and 10th Avenue, New York City, the exact position he had occupied when he had entered the military service. He continued in this position until January 1, 1946, when he was promoted to the position of assistant agent in charge of the respondent's midnight shift at Lackawanna Terminal, Hoboken, New Jersey. On April 23, 1946, he was again promoted to the position of an assistant agent at the Communipaw Terminal of the respondent at Jersey City, New Jersey. Each of these promotions resulted in an increase in pay to the petitioner. He continued as assist-ant agent at the Communipaw Terminal of the respondent until May 20, 1946, when he was discharged by the respondent on the ground that he was an undesirable employee.

5. The petitioner's employment with the respondent for a great many years was during the nighttime and during the daytime he had studied law and had become a member of the Bar of the State of New Jersey in 1932. In 1932 until his entry into the United States Armed Forces in August, 1941, the petitioner carried on the practice of law during the daytime to a limited extent, but there is no evidence that up to 1941 the petitioner engaged in the practice of law in any manner which was inimical or harmful to the interests of the respondent.

6. On or about January 5, 1946, while the petitioner was at work as assistant agent at the Hoboken Terminal of the respondent, he was approached by a Mr. George Fitzpatrick, President of the Patrolmen's Benevolent Association of the Hoboken Police Department, and asked by him to represent approximately sixteen police officers of the City of Hoboken who were involved in a controversy regarding their duties and other conditions arising out of their employment as police officers of the City of Hoboken. The petitioner after considering the matter agreed to represent these police officers. At or about that time petitioner was cautioned by Mr. Laughlin, an agent of the respondent, that if he became involved in the political situation in Hoboken not to involve the respondent. It also appeared that petitioner some time prior to his entry into military service in 1941 had been active in politics in the City of Hoboken and had been a candidate for City Commissioner and was defeated. It also appeared that as a result of petitioner's investigation of police officers' difficulties with the municipal officials of the City of Hoboken he was highly incensed and outraged at what he considered the unfair treatment the police officers were receiving. This is further evidenced by his admission that he referred to the tactics of the municipal officials of the City of Hoboken as "Hitleristic" and in his letters to the respondent subsequent to his discharge

wherein he referred to the corrupt political machine in Hoboken and the leaders thereof as "bosses".

7. In January, 1946, the petitioner represented a police officer named Quinn in a departmental police trial and subsequently successfully appealed his dismissal to two appellate courts. Early in May, 1946, the petitioner also represented in departmental trials before the Department of Public Safety Police Officer Wladich and Police Officer Carmody. The petitioner proceeded with appeals on those cases but they had not been argued at the time of his discharge.

8. Prior to April 11, 1946, one of the police officers being represented by the petitioner was Edward J. Sheehy, who was under suspension from the Police Department of the City of Hoboken for alleged willful disobedience of orders. On April 11, 1946, the petitioner accompanied Edward J. Sheehy to the Jersey City Terminal of the respondent where the petitioner sought out Joseph J. Schnell, the agent in charge of that terminal for respondent for the purpose of obtaining a temporary position for Police Officer Sheehy.

I find that Sheehy, at the solicitation of the petitioner, was employed by the agent Schnell as a temporary employee to perform the ordinary duties of an expressman in loading and unloading shipments of merchandise from and to railroad cars and trailers, and other work incidental thereto, and that the said Sheehy was generally familiar with that work having been employed by the respondent eight or nine years prior thereto.

I find that the said Sheehy submitted to a physical examination by a physician employed by the respondent on April 11, 1946, and stated to said physician that he had not had any sicknesses during the past five years and that the said physician found that the said Sheehy was physically qualified to fill the position of platform man with the respondent.

The said Sheehy began work on the night of April 11, 1946, and worked four nights for the said respondent and performed the regular work and in the same manner as performed by other employees engaged in the same line of work with him. At the end of the four days' work the said Sheehy's employment was discontinued because of lack of work due to a strike of elevator operators in New York City.

On May 13, 1946, Sheehy's trial for alleged willful disobedience of orders came on for hearing before the Deputy Director of the Department of Public Safety of the City of Hoboken and the said Sheehy was defended by the petitioner as his attorney. The said Sheehy set up as his defense in that trial that he did not willfully disobey any orders of his superiors and that he was physically unable to carry on the extra duty assigned to him in the Police Department because of illness. At his trial, when confronted with his employment beginning April 11, 1946, and continuing for four days at the respondent's place of business in Jersey City, he testified that he worked there only two and one-half days and that he was compelled to cease working because of his physical condition. He also testified that the position with the respondent had been obtained for him by the petitioner herein and that arrangements had been made for him to do light work, and that during the course of his employment he was permitted to pick out the small packages to carry, weighing approximately two to three pounds. Petitioner herein has admitted that he obtained the position for the said Sheehy and contended that he arranged with the agent, Mr. Schnell, for the said Sheehy to receive light work. This was brought out by the petitioner on the examination of the said Sheehy at the said police trial.

9. As a result of said trial reports of it were printed in the public press and the trial came to the attention of the executive officers of the respondent. An investigation was undertaken to determine whether or not its agent Schnell had hired the said Sheehy at the solicitation of the petitioner at regular wages to do light work, and as a result of the said investigation Mr. J. F. Ross, General Manager of the Eastern Department of respondent, correctly concluded that the said Sheehy was not hired to do light work, that he did do his regular work and that he was paid the regular wages for the said work, and that the statements

of the said Sheehy that he received light work and was hired to do light work were false and that the statement of the said petitioner that he had arranged for the employment of said Sheehy to do light work was not true.

On May 16, 1946, the petitioner was summoned and did appear before Mr. J. J. McDermott, one of his supervisors, who called his attention to the newspaper article which in effect set forth that the petitioner had obtained employment for the said Sheehy and that Sheehy had been engaged to do light work and did light work while working for the respondent. The petitioner was advised by the said supervisor, McDermott, that he would have to withdraw from his outside activities involving the defense of the police cases as his actions were harmful and detrimental to the interests of the respondent. On the same day, petitioner had a conference for about approximately two hours with Mr. J. F. Ross, General Manager of the Eastern Department of the respondent, and he advised the petitioner that his actions in becoming involved in a very controversial matter with the officials of the City of Hoboken were harmful to the interests of the respondent, and that his action in the Sheehy case had brought on unfavorable publicity to the respondent and that it was harmful in that it led the officials of the City of Hoboken to believe that the respondent was providing a haven for a suspended police officer. He also informed the petitioner that the respondent had received a communication from the Deputy Police Chief of Hoboken to the effect that the respondent would not be permitted to park its vehicles so that they extended out more than 16 feet into Observer Highway, which was the location of the respondent's warehouse in Hoboken. He also stated to the petitioner that it was possible, although he had no way of proving it, that this letter resulted from the petitioner's activities and actions arising out of the defense of the various police officers. The General Manager Ross advised the petitioner that he would have to cease activities which were harmful and prejudicial to the interests of the respondent and in view of what had happened if petitioner continued in the defense of the police officers he would be discharged. Petitioner was given several days in which to make his decision and on May 19, 1946, petitioner wrote to said General Manager Ross: "I must reserve my right to fight for the right." At approximately midnight May 20, 1946, petitioner received a written notice of dismissal from the employ of respondent as an undesirable employee.

11. I further find as a fact that no agreement was made by the petitioner with Mr. Schnell, the agent of the respondent at Jersey City, New Jersey, to engage the said Sheehy as an employee to perform light work, but that the agreement was that Sheehy should do the same work as other employees of the respondent engaged in similar work.

12. I find as a fact that the acts and actions of the petitioner in engaging in controversial litigation with the municipal officials of the City of Hoboken, and the act of the petitioner in obtaining employment for the Police Officer Sheehy under the circumstances hereinbefore related, and the petitioner's statements at the trial of said Sheehy that he had explained to the management of the respondent that Sheehy was only able to do light duties, and the resultant publicity, was harmful and prejudicial to the business interests of the respondent and was a violation of the loyalty and duty owed by the petitioner to respondent as a supervisory employee.

### Conclusions of Law.

1. That the petitioner, Walter R. Gottschalk, was legally discharged with cause by the respondent, Railway Express Agency, Inc., on May 20, 1946.

2. That the petitioner, Walter R. Gottschalk, is not entitled to be restored to any position with the said respondent, Railway Express Agency, Inc., or to recover any wages from the said respondent.

3. That the petition heretofore filed in this matter should be dismissed and that the rule to show cause issued be discharged and that judgment be entered in favor of the respondent, Railway Express Agency, Inc., and against the petitioner, Walter R. Gottschalk.